Jose A. **Ulloa**,
Plaintiff/Appellant,
v.
Edward **Maratita**, Vicente A. Manglona
and Marianas Management Corporation,
Defendants/Appellees.
Appeal No. 95-025
Civil Action No. 91-0365
August 25, 1997

Argued and submitted June 25, 1997

Counsel for Appellant: Douglas F. Cushnie, Saipan.

Counsel for Appellee Edward U. Maratita: Vicente T. Salas, Saipan.

Counsel for Appellee Vicente M. Manglona: Stephen S. Nutting, Saipan.

Counsel for Appellee Marianas Management Corporation: Antonio M. Atalig, Saipan.

BEFORE: VILLAGOMEZ, Justice, WISEMAN and LIZAMA, Special Judges.

VILLAGOMEZ, Justice:

¶1    Appellant, Jose A. Ulloa ("Ulloa"), appeals the Superior Court judgment holding that appellee, Edward U. Maratita ("Maratita"), possessed proper authority, as Ulloa's agent, when he sold Ulloa's land, and did not breach his fiduciary duty when he sold the land for $550,000 and retained his agreed share of the proceeds.

## I.

¶2    ■ Ulloa raises the following five issues.

1. Whether the Superior Court erred in ruling that the power of attorney signed by Ulloa authorized Maratita to sell Lot No. 3159.
2. Whether the Superior Court erred in ruling that Maratita did not breach any fiduciary duty.
3. Whether the Superior Court erred in ruling that Maratita did not hold funds in a constructive trust for Ulloa.
4. Whether the Superior Court erred in not rescinding the transfer of Lot No. 3159.
5. Whether the Superior Court erred by rejecting 14 of

Ulloa's proposed jury instructions and by giving a verdict form to the jury that was improper.

These issues are either questions of law or mixed questions of law and fact subject to de novo review. *Rosario v. Quan*, 3 N.M.I. 269, 276 (1992)

## II.

¶3 At all times relevant to this case, appellant Ulloa lived on Saipan at the home of Maratita's mother. Appellee Maratita is Ulloa's nephew who lived on Rota. Ulloa initially owned Lot No. 3159 containing 9.5 hectares located in Rota. After a period of discussions regarding the sale or lease of Ulloa's property, Maratita, who is not a lawyer, drafted a power of attorney which Ulloa executed on June 23, 1988. The power of attorney appointed Maratita as attorney in fact for Ulloa and gave Maratita the power:

> To endorse in my name and on my behalf, all real estate transactions and other negotiable instruments that may require my endorsement pertaining to my real estates . . . situated, lying and being located on Rota . . . Lot 3159 . . . containing an area of 9.5 hectares, more or less.

E.R. at 3-2 (Plaintiffs Exh. 1). On the same day, Ulloa signed a letter addressed to Maratita which states in part: "Based on my June 23, 1988 Power of Attorney, if a lease or sale of my property is to be made my price is $250,000.00." *Id.* at 3-3 (Plaintiffs Exh. 2).

¶4 During their discussions and the execution of these documents Ulloa and Maratita orally agreed that if the land were sold or leased for $250,000, Maratita would keep 10% of the proceeds. If the land were sold or leased for more than $250,000 but less than $1,000,000 Maratita would keep any amount above $250,000 and pay the government tax. If sold or leased for more than $1,000,000 then they would split the proceeds equally.

¶5 Maratita negotiated a sale of the land to Vicente M. Manglona ("Manglona") and showed him the power of attorney and the letter. On August 11, 1988, Maratita, on behalf of Ulloa, entered into an agreement to sell Lot 3159 to Manglona for $550,000. On August 23, 1988, Manglona entered into a conditional agreement to sell Lot 3159 to Marianas Management Corporation for $2,581,305. The condition was for Manglona to clear title. Maratita was unaware of this conditional agreement prior to his conveyance of the property to Manglona. On October 31, 1988, Maratita, as attorney in fact for Ulloa, executed a "warranty deed" transferring the land to Manglona. The following day, Manglona transferred the land to Marianas Management Corporation by a Warranty Deed dated November 1, 1988.

¶6 On November 9, 1988, Maratita obtained a cashier's check in the amount of $250,000 payable to Ulloa. He personally delivered the check to Ulloa at his store in San Antonio, Saipan, on the same date. In December 1988, Maratita came to Saipan to give Ulloa $27,000 to pay for the government tax. Ulloa was not at home, therefore, he gave the money to his mother to give to Ulloa when he returned home. Maratita kept the balance of the sales proceeds pursuant to his agreement with Ulloa.

¶7 On May 28, 1991, Ulloa filed a complaint with the Superior Court alleging that Maratita had no authority to sell Ulloa's land, that Maratita defrauded Ulloa, and that the two deeds are null and void. Ulloa prayed for general damages, punitive damages, rescission of the deeds, and return of the land to him. Ulloa also demanded a jury trial.

¶8 The Superior Court referred to the jury, for its adjudication, the issue of fraud. The court retained, for its own adjudication, the issues of constructive trust, breach of fiduciary duty, and rescission of the two warranty deeds. The jury returned a verdict for Maratita finding that he did not commit any act of fraud against Ulloa. The court found that Maratita did not hold any part of the sales proceeds in constructive trust for Ulloa, that Maratita did not breach any fiduciary duty, and that there was no basis for rescinding the two deeds. The court found that Maratita had the authority to sell the land on behalf of Ulloa and that he legally kept his share of the proceeds pursuant to their express agreement.

¶9 ■ Ulloa states on page 4 of his opening brief that he timely appealed. However, he did not separately demonstrate the statutory basis of the jurisdiction of the Superior Court and of this Court, and the timeliness of the appeal, as required by Com. R. App. P. 28(L)(2) and (3). We conclude that we have jurisdiction pursuant to 1 CMC § 3102(a). We affirm the findings, conclusions and judgment of the Superior Court.

## III.

¶10 Ulloa argues that the power of attorney did not authorize Maratita to sell the land because it does not use the terms "sale, gift, bargain, transfer, convey, and encumber." Instead it uses the word "endorse." According to Ulloa, to endorse means to sign the back of a negotiable instrument. It does not authorize a sale or conveyance of land. In addition, the Commonwealth statute of frauds prohibits oral employment of an agent or broker for the sale of land if the employment is to extend over one year. Because the power of attorney does not authorize Maratita to sell the land, but only to find a buyer or lessee, the agreement regarding Maratita's commission must be in writing and since it not, it is invalid.

¶11 The question before us on appeal is whether the Superior Court committed a reversible error by interpreting the power of attorney, along with the letter, to grant Maratita the authority to sell the land on behalf of

94

Ulloa. We find no reversible error.

¶12 ■ The power of attorney appointed Maratita as Ulloa's attorney in fact and authorized him "to endorse in my name and on my behalf, all real estate transactions . . . that may require my endorsement pertaining to my real estates . . . situated, lying and being located on Rota . . . Lot 3159 . . . containing an area of 9.5 hectares, more or less." At oral argument the parties agreed that "to endorse" may be and is often used to mean "to sign." To sign further means to execute. The Superior Court interpreted the power of attorney to have empowered Maratita to sign the land sales agreement and the warranty deed as attorney in fact for Ulloa. The sale of the land is a "real estate transaction" and Maratita is authorized to sign or execute such transaction in the name and on behalf of Ulloa. The letter dated June 23, 1988, made it crystal clear that Ulloa, through the power of attorney, authorized Maratita to either lease or sell the land. In the event of a sale, Ulloa's price was $250,000. Pursuant to their oral agreement, Maratita was to keep any amount above the $250,000 and pay the government tax. Maratita complied fully with their agreement.

¶13 ■ The oral agreement between the parties did not violate 2 CMC § 4914(d).[1] Under this section, an agreement employing an agent to sell land must be in writing if the agreement is to extend for over one year. Here, Ulloa appointed Maratita as his agent to sell his land within one year. Therefore, no writing is required.

### IV.

¶14 ■ Ulloa contends that under Maratita's fiduciary duty, he should have sold the land for at least $2.5 million. His failure to sell at this market price, and to have sold the land for merely $550,000 constitutes a breach of fiduciary duty. He argues that the Superior Court committed reversible error by finding no breach of fiduciary duty. We find no reversible error.

¶15 Maratita had no knowledge that Manglona was negotiating a subsequent sale of the land for a higher price to Marianas Management Corporation. He testified that had he known of Marianas Management Corporation's willingness to pay the $2.5 million, he would have dealt directly with that buyer. Maratita is neither an experienced nor trained real estate broker. The land itself was not formally appraised and he must have thought that $550,000 was a reasonable price for such Rota land. Even Ulloa himself expressly manifested that his price was

$250,000. Maratita sold the land for double that price.

¶16 The Superior Court found and concluded that the sale of the land for $550,000 did not constitute a breach of fiduciary duty. This finding and conclusion is amply supported by the evidence.

### V.

¶17 Having correctly found and concluded that Maratita had legal authority to sell the land and did not breach his fiduciary duty, the Superior Court had no basis for finding either that Maratita holds funds in a constructive trust or that the transfer of the land should be rescinded. We, therefore, have no reason to reverse the decision of the Superior Court as to issues number three and four.

### VI

¶18 Ulloa contends that the court's refusal to give 14 of his proposed jury instructions constitutes reversible error. In addition, he contends that the verdict form given to the jury was improper and constitutes reversible error. We find no reversible error as to either contention

¶19 ■ We have reviewed the proposed instructions which were not given and those instructions that were given. Most of the proposed instructions not given pertain to the fiduciary relationship between a principal and agent, rather than the issue of fraud. The instructions that were given cover the issues assigned to the jury for its determination. They cover the following: (1) the essential elements of fraud; (2) concealment or suppression of a material fact; (3) duty to disclose known facts in a fiduciary relationship; (4) definition of "fiduciary" or "confidential relationship;" and, (5) the making of a promise, not intended to be performed.

¶20 These five areas are fully explained in the given instructions. Because of these instructions, the verdict form given to the jury is not so improper as to constitute reversible error. The verdict form specifically asks the jury whether Maratita defrauded Ulloa by concealing or suppressing a material fact regarding the sale of the land.

### VII.

¶21 For the above reasons, we **AFFIRM** the findings, conclusions and judgment of the Superior Court.

---

[1] "An agreement authorizing or employing an agent, broker, or any other person to purchase or sell real estate for a longer period than one year, or to procure, introduce or find a purchaser or seller of real estate or a lessor or lessee of real estate where such lease is for a longer period than one year for compensation or commission." 2 CMC § 4914(d).